# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY COOPER, a shareholder derivatively on behalf of Walden Pond Development, Inc., a Pennsylvania Corp., )<br>)<br>)<br>)<br>  Plaintiff, )<br>)<br>  vs. )<br>)<br>SEBASTIAN RUCCI, )<br>)<br>  Defendant. ) | Civil Action No. 07-00036 |

## MEMORANDUM OPINION and ORDER

This case stems from a business dispute between the Plaintiff, Gary Cooper (hereinafter, "Plaintiff"), and the Defendant, Sebastian Rucci (hereinafter, "Defendant"), relating to the development of real property located in Cranberry Township, Pennsylvania. On or about June 16, 2003, the Plaintiff and Defendant formed a Pennsylvania Corporation, Walden Pond Development, Inc. ("Walden Pond"), for the purpose of carrying out the development project, which consisted of three phases. Pending before the Court is Defendant's Motion to Dismiss for Lack of Standing or Subject Matter Jurisdiction or For Judgment on the Pleadings [82].

The Court draws the relevant facts from Plaintiff's well-pled Complaint. The Defendant was to do all the work required to make the developed property ready for sale and subdivide it for sale as residential lots. The Plaintiff was to provide capital for expenses for the project. Both the Plaintiff and Defendant intended for each to have a fifty-percent ownership interest in the Walden Pond Corporation. (Docket No. 23 at 3-4).

At some point after the commencement of Phases I and II of the project, Plaintiff began to

suspect that corporate money was being misused or diverted from the corporation by Defendant. After examining corporate bank statements provided to Plaintiff by the Defendant and comparing them to corporate bank statements obtained directly from the corporation's bank, the Plaintiff discovered large discrepancies. The Plaintiff then obtained copies of checks written by Defendant against the Walden Pond corporate account and discovered that Defendant had spent large sums of money on unauthorized expenses, including personal expenses. (Docket No. 23, 5-7).

As of November 1, 2006, all of the residential lots in Phase I and II had been sold, with the exception of four lots. Plaintiff alleges that one of these four remaining lots was later sold by the Defendant, who then diverted the $120,000 purchase price from Walden Pond. According to the Plaintiff, Defendant then recorded a deed transferring the three remaining unsold lots to him for one dollar. Finally, the Plaintiff alleges that Defendant, through another corporation owned or controlled by the Defendant, purchased the property for Phase III of the development. According to the Plaintiff, this purchase was a corporate opportunity held only by Walden Pond and the Defendant usurped this opportunity for his own benefit to the detriment of Walden Pond. (Doc. No. 23, at 7-8).[1]

Plaintiff brought suit seeking to set aside any transfer of Walden Pond's real property to the Defendant and to collect damages against the Defendant. The Plaintiff is currently a shareholder, officer and director of Walden Pond and was a shareholder at the time of all the transactions complained of above.[2] (Docket No. 23, at 3).

---

[1] In his Answer and Counterclaim, the Defendant disputes all of the relevant facts mentioned above, save for the assertion that the Plaintiff and Defendant formed a Pennsylvania Corporation named Walden Pond in the summer of 2003. (Docket No. 80, at 1).

[2] Defendant asserts that he acquired Plaintiff's shares, and his corresponding fifty-percent ownership interest in Walden Pond at some point during the development of the property, thereafter

## PROCEDURAL HISTORY

On January 5, 2007, Plaintiff initiated the instant action in the name of Walden Pond by filing a Complaint in Equity in the Court of Common Pleas of Butler County, Pennsylvania. On January 10, 2007, Defendant filed a Notice of Removal. (Docket No. 1). On January 30, 2007, Plaintiff filed a Motion to Amend the Complaint to convert the action into a shareholder derivative action. (Docket No. 10). On June 5, 2007, the Court orally granted Plaintiff's Motion to Amend the Complaint, which Plaintiff filed the same day. (Docket Nos. 22 & 23).

On December 26, 2007, Defendant filed an Answer and Counterclaim to the First Amended Complaint (Docket No. 80) as well as the instant pending motion. (Docket No. 82). On January 15, 2008, Plaintiff filed Plaintiff's Answer and Affirmative Defenses to Counterclaim (Docket No. 85) and Plaintiff's Brief in Opposition to Motion to Dismiss for Lack of Standing or Subject Matter Jurisdiction or for Judgment on the Pleadings. (Docket No. 86). On January 27, 2008, Plaintiff filed a Reply to the Response to the Motion to Dismiss for Lack of Standing or Subject Matter Jurisdiction or for Judgment on the Pleadings. (Docket No. 89). This motion is now ripe for disposition.

## STANDARD

The Court notes that Defendant's motion to dismiss for lack of standing or subject matter jurisdiction contains an alternative motion for judgment on the pleadings. Because Defendant's argument for judgment on the pleadings is wholly intertwined with the standing issue, and because resolution of the standing issue moots the arguments raised for judgment on the pleadings, the Court will resolve the instant motion under the standard applicable to motions to dismiss under rule

---

removing Plaintiff as a director and officer of the corporation. (Docket No. 80, at 5-6). Plaintiff denies this allegation. (Docket No. 85).

3

12(b)(1) of the Federal Rules of Civil Procedure.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the lack of subject matter jurisdiction over a plaintiff's claims. *See* Fed. R. Civ. Pro. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Petruska v. Gannon University*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortenson v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977)). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court must distinguish between facial attacks and factual attacks. *Petruska*, 462 F.3d at 302.

A facial attack challenges the sufficiency of the pleadings, and the court must accept the plaintiff's allegations as true. *Id.* When a defendant attacks a complaint on its face, he "[asserts] that considering the allegations of the complaint as true, and drawing all reasonable inferences in favor of [plaintiff], the allegations of the complaint are insufficient to establish a federal cause of action." *Mullen v. Thompson*, 155 F.Supp.2d 448, 451 (W.D. Pa. 2001). Dismissal is proper under Rule 12(b)(1) only when "the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous." *Kehr Packages, Inc. v. Fidelcor, Inc.*, , 1409 (3d Cir. 1991), *cert. denied*, 501 U.S. 1222 (1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)).

On the other hand, when a defendant launches a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska*, 462 F.3d at 302 (quoting *Mortenson*, 549 F.2d at 891). In a factual scenario, the court must weigh

4

the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings. *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

Here, Defendant attacks Plaintiff's Complaint on its face by asserting that Plaintiff failed to make a demand on the board of the corporation prior to filing the Complaint and therefore, lacks standing to maintain the action. (*See* Defendant's Motion at 2). As he is the party asserting jurisdiction, Plaintiff "bears the burden of showing that its claims are properly before the district court." *Development Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). *See also Kehr Packages, Inc.*, 926 F.2d at 1409 ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion").

## ANALYSIS

Defendant argues that Plaintiff's First Amended Complaint should be dismissed in its entirety because Plaintiff failed to make a demand upon the corporation prior to commencing this shareholder derivative action, in violation of Pennsylvania law. As a preliminary matter, the Court notes that jurisdiction in this case rests on the diversity of the parties. 28 U.S.C. §1332(a)(1). A federal court sitting in diversity must apply the substantive law of the state in which it sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). There is no dispute that Pennsylvania law applies to this case, and furthermore, the U.S. Court of Appeals for the Third Circuit has held that when determining the scope of the demand requirement and its exceptions, courts apply the law of the state of incorporation. *Garber v. Lego*, 11 F.3d 1197, 1201 (3d Cir. 1993). Since Walden Pond is a Pennsylvania corporation, Pennsylvania law governing shareholder derivative actions applies here.

Defendant relies on the Pennsylvania Supreme Court's decision in *Cuker v. Mikalauskas*, 692

5

A.2d 1042 (1997), where the Court expressly adopted sections 7.02-7.10 as well as section 7.13 of the American Law Institute's Principles of Corporate Governance ("ALI Principles"), which relate to shareholder derivative actions. *Cuker*, 692 A.2d at 1049. According to the Court in *Cuker*, "these sections set forth guidance which is consistent with Pennsylvania law and precedent, which furthers the policies inherent in the business judgment rule, and which provides an appropriate degree of specificity to guide the trial court in controlling the proceedings in this litigation." *Id*.

Pursuant to section 7.02 of the ALI Principles, a shareholder lacks "standing to commence and maintain a derivative action" if he has not "complied with the demand requirement of section 7.03." ALI Principles §7.02(a)(2)(B)(3). Section 7.03 of the ALI Principles sets forth the requirement that before commencing a derivative action, a shareholder "must make a written demand upon the board of directors of the corporation, requesting it to prosecute the action or take suitable corrective measures unless demand is excused under §7.03(b)." ALI Principles §7.03(b). Pursuant to section 7.03(b), the demand requirement should only be excused "if the plaintiff makes a specific showing that irreparable injury to the corporation would otherwise result, and in such instances demand should be made promptly after commencement of the action." ALI Principles §7.03(b).

It is undisputed that the Plaintiff failed to make a demand upon the corporation prior to the commencement of the instant action. His failure to make a demand, however, is not fatal to his case. While the Court in *Cuker* expressly adopted sections 7.02-7.10 and sections 7.13 of the ALI Principles, the Court made clear that the "adoption of these sections is not a rejection of other sections not cited." *Cuker*, 692 A.2d at 1049. In *Cuker*, the Court identified and studied those ALI sections that applied to that case and adopted those which were most relevant. The Court noted that future cases might implicate additional sections of the ALI Principles and that Pennsylvania courts

6

"are free to consider other parts of the work and utilize them if they are helpful and appear to be consistent with Pennsylvania Law." *Id.* One such section, section 7.01(d) applies to the instant case.

Section 7.01(d) of the ALI Principles provides:

> In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation of the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

ALI Principles §7.01(d).

The Court in *Cuker* was not required to consider section 7.01 of the ALI Principles because the defendant, PECO Energy, was not a closely held corporation. Were the Pennsylvania Supreme Court to adopt section 7.01(d), Pennsylvania courts would have discretion to treat certain claims involving closely held corporations as individual actions, exempting them from the procedural requirements for derivative actions, as long as the three requirements of section 7.01(d) were met. The U.S. Court of Appeals for the Third Circuit discussed the applicability of section 7.01(d) to a closely-held Pennsylvania corporation in *Warden v. McLelland*, 288 F.3d 105 (3d Cir. 2002). There, the plaintiffs were minority shareholders who filed a derivative action on behalf of a corporation against their brother who was in control of the corporation.[3] The district court dismissed the Complaint for failing to make a demand upon the board before the filing of the suit. The Court of

---

[3] The plaintiffs did not make a demand on the board of directors of the corporation either before filing suit or shortly thereafter, but the court found that the plaintiffs had made a specific showing of irreparable injury to the corporation and therefore satisfied the requirements of §7.03(b). *See Warden*, 288 F.3d at 111.

Appeals reversed, noting that "there are good reasons to believe the Pennsylvania Supreme Court would adopt §7.01(d)."[4] *Warden*, 288 F.3d at 113. The Court indicated that the Pennsylvania Supreme Court had invited lower courts to adopt other sections of the ALI Principles that "interlocked" with the sections adopted in *Cuker*. *Id.*

Defendant contends that section 7.01(d) does not interlock with the procedural provisions adopted in *Cuker*, but that argument lacks merit. As the *Warden* court noted when rejecting this very argument, the ALI, when promulgating its rules of corporate governance, adopted section 7.03 in light of section 7.01, which allows certain cases involving closely held corporations to avoid the demand requirement. Thus, "the close corporation exception *closely* interlocks with section 7.03.". *Warden*, 288 F.3d at 113 (emphasis added).

Applying section 7.01(d) to the facts of the case, the *Warden* Court found that because the plaintiff was the only minority shareholder, there was no reason that treating the action as a direct action would invite multiple actions, materially prejudice the interests of creditor or the corporation, or interfere with a just recovery. *Warden*, 288 F.3d at 112. Even though the *Warden* Court predicted that section 7.01(d) would be adopted by the Pennsylvania Supreme Court under such circumstances, the Court did not hold as much as the case was resolved on other grounds.[5]

While *Warden* did not decide the issue surrounding the adoption of section 7.01(d), one

---

[4] *See also Audio Visual Xperts, Inc v. Walker,* 2000 Del. Ch. LEXIS 30 (2000) (predicting that the Pennsylvania Supreme Court would adopt section 7.01(d) of the ALI Principles to the demand requirement in the context of a closely held corporation and that *Cuker* did not require dismissal of plaintiff's derivative claims for failure to make a demand).

[5] Because the plaintiffs had also pled irreparable injury to the corporation, and therefore complied with §7.03(b) of the ALI Principles, giving them standing, it was unnecessary for the court to resolve the §7.01(d) issue. *See Warden*, 288 F.3d at 111-114.

recent federal case has resolved the applicability of section 7.01(d) under Pennsylvania law. In *Nedler v. Vaisberg,* 427 F.Supp.2d 563 (E.D. Pa. 2006), the Court considered the position of Pennsylvania courts on the applicability of section 7.01(d), along with the *Warden* Court's prediction that the Pennsylvania Supreme Court would adopt the section, and concluded that section 7.01(d) of the ALI Principles may be applied in appropriate cases in Pennsylvania. *Nedler*, 427 F.Supp.2d at 571. *Nedler* involved three shareholders in a closely-held corporation who failed to make a demand on the board before proceeding with their derivative claims. The Court held that because the action satisfied the three-part test of section 7.01(d), the court would exercise its discretion and treat the action as a direct action.[6] *Nedler* 572.

As the *Nedler* Court indicated, numerous Pennsylvania trial courts have used their discretion and applied section 7.01(d) to disputes involving closely held corporations. In *Top Quality Manufacturing v. Sinkow,* 2004 Phila. Ct. Com. Pl. LEXIS 61 (2004), the court was faced with a dispute between two shareholders of a closely held corporation over several of the company's transactions. The plaintiff alleged, inter alia, breach of fiduciary duty and misuse and misappropriation of corporate funds. Both parties agreed that section 7.01(d) of the ALI principles governed because Top Quality was a closely held Pennsylvania corporation. *Id.* at 2. The court applied the three part test under 7.01(d) for determining when demand is excused and found that neither the multiplicity of action or the recovery aspect of the test applied. Because there were only two shareholders of Top Quality, the plaintiff and defendant, any action could only have been

---

[6] With the exception of two shareholders who had settled their claims, all shareholders' interests were represented in the suit. There were no creditors to take into account and the treatment of the action as a direct action would not interfere with a just recovery. *Nedler* at 572.

9

instituted by one of them and any recovery would have to flow to either of them. *Id.* at 3. There was also no indication that any creditors would be prejudiced by the plaintiff proceeding directly under section 7.01(d). *Id.*

In *Baron v. Pritzker*, 52 Pa. D&C 4th 14 (Phila. Ct. Com. Pl. 2001), a stockholder agreement between Baron and Pritzker, each of whom had a fifty-percent interest in two Pennsylvania corporations, contained a disability buyout provision in the stockholder's agreement. After Baron suffered from a series of serious medical problems, a dispute arose over Pritzker's alleged refusal to buy out Baron's interest in the corporations pursuant to the agreement. Instead, Pritzker allegedly froze Baron out of the corporations, refused Baron access to any company information, and spent corporate money on personal expenses. *Baron*, 52 Pa. D&C 4th at 17-19. Relying on *Cuker,* the court found that section 7.01(d) was helpful and consistent with Pennsylvania law and applied section 7.01(d) to the closely held corporation in the case. *Id.* at 27. In its analysis, the court in *Baron* found that there was no danger of a multiplicity of suits since Pritzker and Baron were the only two shareholders and directors of the corporations. The Court found no reason to conclude that allowing a direct action would materially prejudice the interests of creditors, and furthermore, allowing a direct action would not interfere with a fair distribution of the recovery among all interested persons because the only person who stood to benefit from any recovery was Baron. *Id.*

Similarly to the courts in *Sinkow* and *Pritzker*, several Pennsylvania courts have also exercised their discretion and applied ALI section 7.01(d). *See also White v. George*, 66 Pa. D & C 4th 129, 133-36 (Pa.Com.Pl. 2004) (exercising its discretion to treat the derivative causes of action pled as direct actions under section 7.01(d)); *Liss v. Liss*, Nos. 2063 JUNE TERM 2001, CONTROL 102951, 2002 WL 576510, at *3-9 (Pa.Com.Pl. March 22, 2002) (exercising its discretion under

section 7.01(d) to treat the plaintiff's derivative claims as direct claims for which demand was not required); *Levin v. Schiffman*, No. 4442JULYTERM2000, 2001 WL 1807922, at *7(Pa.Com.Pl. 2001) ("find[ing] that § 7.01(d) of the ALI Principles is helpful and consistent with Pennsylvania law and will apply it as an exception to the demand requirement for the closely-held corporation in this case"); *KWLP v. Bruestle*, No. 06-07046-24-1, 2007 Pa. Dist. & Cnty. Dec. LEXIS 169, at *11-12 (Pa.Com.Pl. Feb. 12, 2007) (providing that "in the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action" and finding that the plaintiffs met the standard set forth in *Nedler* to apply section 7.01(d) as an exception to Pennsylvania demand requirement).

Despite ample case law to the contrary, Defendant argues there is no authority to disregard the demand provision simply because the corporation has two shareholders or is a closely held corporation. The cases relied upon by the defendant to support this proposition, however, do not involve closely held corporations but rather larger corporations to which it is clear the demand requirement in section 7.03(b) of the ALI principles would apply. (Docket No. 94, at 3-4). The Court accepts that section 7.03(b) applies to the cases cited by the defendant, but the issue in this case is whether Pennsylvania courts have applied section 7.01(d) as an *exception* to the demand requirement of 7.03(b) in cases involving closely held corporations. As the Court discussed above, it is clear that Pennsylvania courts have done so.

Defendant next argues that §7.01(d) is contradictory to Pennsylvania law and therefore does not meet the requirement put forth in *Cuker* that application of any of the ALI Principles not expressly adopted by *Cuker* must be consistent with state law before a court may consider applying them to a given case. *Cuker*, 692 A.2d at 614. According to the Defendant, section 7.01(d) is in

11

direct contraction with section 1717 of the Pennsylvania Business Corporations Law ("B.C.L."). *See* 15 Pa. C.S.A. § 1717 (1990).[7] Because of this contradiction, Defendant contends that section 7.01(d) would likely not be adopted by the Pennsylvania Supreme Court. This argument has been considered and rejected by Pennsylvania courts. In *Warden*, the Court noted that "the Pennsylvania Supreme Court might decide to adopt section 7.01(d) only to the extent it creates exceptions to the procedural requirements of derivative actions." *Warden*, 288 F.3d at 113. In *Liss*, the Court expressly rejected the argument that section 1717 of the B.C.L. is inconsistent with section 7.01(d), finding that "certain kinds of claims that would otherwise be derivative can be treated as direct claims under certain circumstances notwithstanding the limitation on standing provided in section 1717. *Liss*, 2002 WL 576510, at *4. Furthermore, the *Liss* Court noted that section 1717 does not speak to the situation of a fifty percent shareholder oppressing the other fifty-percent shareholder in a close corporation, as is the case presently before the Court. *Id.* The Court finds the reasoning in *Liss* and *Warden* persuasive and agrees that section 7.01(d) is not contradictory to Pennsylvania law, but is rather an exception to the procedural requirements of derivative actions in the specific context of closely held corporations.

---

[7]
> Section 1717, entitled "Limitation on Standing," provides, in part:
>> The duty of the board of directors, committees of the board and individual directors under 1712 (relating to standard of care and justifiable reliance) is solely to the business corporation and may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation, and may not be enforced directly by a shareholder or by any other person or group.
>
> 15 Pa. C.S.A. § 1717.

Having found that section 7.01(d) applies to the instant case and is consistent with Pennsylvania law, the Court now turns to the instant facts in light of the three-part test established in section 7.01(d). In order to be exempt from the demand requirement, it is a requirement that treating the plaintiff's derivative claims as direct claims would not implicate any of the concerns in section 7.01(d). In the instant case, waiving the demand requirement will not result in exposing the corporation to a multiplicity of actions because there is only one other shareholder who could bring suit, Mr. Rucci, and he is the defendant here. A direct action will also not materially prejudice the interests of creditors, if any.[8] And, allowing this action to proceed as a direct claim will not interfere with a fair distribution of recovery among all interested persons because any recovery will be between Cooper and/or Rucci. Because all of the requirements needed to excuse the demand requirement in the case of a closely held corporation are met in this case, the Court will exercise its discretion and treat Cooper's derivative claims as direct causes of action under section 7.01(d) of the ALI Principles, thereby exempting this action from the demand requirement of section 7.03(b) of the ALI Principles.[9]

Based on the foregoing, the Court DENIES Defendant's Motion to Dismiss for Lack of

---

[8] In his reply, Defendant implies that a direct action may materially prejudice certain creditors as to the development of Phase III of Walden Pond, specifically "the bank." (Defendant's reply at 10). However, Defendant offers no further argument let alone evidence as to whether "the bank" qualifies as a creditor for Phase III. *See Black's Law Dictionary* 161 (2d Pocket Ed. 2001) (defining creditor as "[o]ne to whom a debt is owed; one who gives credit for money or goods"). Without more, the Court declines to speculate whether "the bank" fits within this definition.

[9] Having found that the plaintiff has standing to proceed under section 7.01(d) of the ALI Principles, it is unnecessary to reach Defendant's argument that plaintiff lacks standing due to a failure to plead irreparable harm to the corporation, a requirement for standing in the absence of a demand upon the board under section 7.03(b).

Standing or Subject Matter Jurisdiction or For Judgment on the Pleadings [82].

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc: All counsel of record

Date: April 7, 2008.